UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTENZE PRODUCTS, INC.,

    Plaintiff,

v.                                                 Case No: 8:15-cv-1074-T-36UAM

DEAD MAN SUPPLIES CORP., NANCY
PARKER and KEVIN PARKER,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court upon Plaintiff Intenze Products, Inc.'s Motion for Default Judgment Against Defendants (Doc. 46); Defendant Nancy Parker's ("Nancy") response to the Motion (Doc. 48); and Plaintiff's Supplemental Memorandum of Law in Support of its Motion for Default Judgment against Defendants (Doc. 52). Defendants Dead Man Supplies Corp. ("Dead Man") and Kevin Parker ("Kevin") failed to respond to the Motion, and the time to do so has expired. The Court, having considered the Motion, the Supplemental Memorandum, and being fully advised in the premises, will now GRANT-IN-PART and DENY-IN-PART the Motion.

**I.**     **STATEMENT OF FACTS**

This is an action for trademark and copyright infringement. The Complaint alleges as follows: Plaintiff is a manufacturer, developer, marketer, and distributor of tattoo ink. Doc. 1 ("Compl.") ¶ 14. Plaintiff has common law trademarks in INTENZE and lines of INTENZE ink, as well as several federally registered trademarks, including INTENZE, INTENZE PROD., and ZUPER BLACK (collectively, the "Intenze Marks"). *Id.* ¶ 18. Plaintiff also owns registered and unregistered copyrights in relation to the labeling and packaging of INTENZE ink (collectively, the "Intenze Works"). *Id.* ¶ 19.

Nancy and Kevin are individuals who own Dead Man (collectively, "Defendants"). *Id.* ¶ 11. In November 2013, Plaintiff filed a lawsuit in the Southern District of New York against one of Defendants' suppliers ("New York Lawsuit"). *Id.* ¶ 32. In February 2014, Plaintiff discovered that Defendants were advertising and selling products bearing the Intenze Marks and/or the Intenze Works, and/or products substantially similar to the Intenze Marks and/or the Intenze Works, through their retail store as well as their website, without Plaintiff's permission. *Id.* ¶¶ 25, 27-28. Plaintiff served Defendants with a cease and desist letter, requesting that Defendants voluntarily surrender the infringing products. *Id.* ¶ 29. In the presence of Plaintiff's investigators, Defendants pulled the infringing products from their shelves, attempted to peel the labels containing the Intenze Marks and Intenze Works off of the products, and placed the products into a box. *Id.* ¶ 30. However, Defendants refused to surrender the infringing products to Plaintiff's investigators. *Id.*

Shortly thereafter, Plaintiff amended its complaint in the New York Lawsuit to add Tattoo Supplies Wholesale Corporation a/k/a Dead Man Tattoo Supplies as a party. *Id.* ¶ 32. In April 2014, the Clerk entered a default against Dead Man in the New York Lawsuit. *Id.* Nancy subsequently sent correspondence to the judge in the New York Lawsuit indicating that she is the owner of Dead Man but that Dead Man is not affiliated with Tattoo Supplies Wholesale Corporation. *Id.* In January 2015, Plaintiff voluntarily dismissed Tattoo Supplies Wholesale Corporation from the New York Lawsuit. *Id.*

Despite Plaintiff's efforts to prevent Defendants' unauthorized acts, as recently as March 2015, Defendants have continued to distribute, display, offer for sale, and sell infringing products. *Id.* ¶¶ 31, 33.

In the Complaint, Plaintiff brings claims for copyright infringement (First Cause of Action); trademark counterfeiting (Second Cause of Action); trademark infringement (Third Cause of Action); false designation of origin, passing off, and unfair competition (Fourth Cause of Action); violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") (Fifth Cause of Action); unfair competition (Sixth Cause of Action); and unjust enrichment (Seventh Cause of Action).

A summons was issued as to Defendants, and service was executed as to each of the Defendants on May 14, 2015. Docs. 2, 15-17. On June 19, 2015, Plaintiff sought the entry of a clerk's default against each of the Defendants, Docs. 18-20, and on June 23, 2015, the Clerk entered default as to each of the Defendants, Docs. 21-23. The Magistrate Judge subsequently withdrew the Clerk's entry of default as to Nancy because the docket reflected that Nancy had filed an answer to the Complaint on May 21, 2015, Doc. 24, but after all of Nancy's purported answers had been stricken,[1] Plaintiff again moved for entry of a clerk's default, Doc. 43. The Magistrate Judge granted Plaintiff's request, and the Clerk entered default as to Nancy on January 4, 2016. Docs. 44, 45. Plaintiff now moves for entry of a default judgment, arguing that it is entitled to permanent injunctive relief as well as statutory damages in the amount of $150,000 and reasonable attorneys' fees.

## II.   LEGAL STANDARD

A defendant who defaults is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987); *see also*

---

[1] Plaintiff moved to strike Nancy's answer on the grounds that it was deficient and did not otherwise comply with the Federal Rules of Civil Procedure. Doc. 29. The Court granted Plaintiff's motion with leave to submit an amended answer. Doc. 33. Nancy thereafter submitted a letter purporting to be an amended answer, Doc. 36, which Plaintiff again moved to strike, Doc. 38. The Magistrate Judge granted the motion, and again struck Nancy's purported answer. Doc. 40.

3

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). However, "default does not in itself warrant the court in entering a default judgment"—a court must still determine whether the factual allegations of the complaint provide a sufficient basis for the judgment entered, and "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Similarly, a plaintiff is entitled to only those damages adequately supported by the record. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).

### III. DISCUSSION

#### A. Clerk's Entry of Default

Federal Rule of Civil Procedure 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b). *DirectTV, Inc. v. Griffin*, 290 F.Supp. 2d 1340, 1343 (M.D. Fla. 2003).

> Under the federal rules, a plaintiff may serve an individual defendant by
>
> > [L]eaving a copy of [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there ...

Fed. R. Civ. P. 4(e)(2)(B). A plaintiff may also serve a defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

4

Plaintiff's affidavit of service filed on May 14, 2015, shows that the process server effectuated service on Dead Man Supplies Corporation, Kevin Parker and Nancy Parker by serving Nancy Parker individually, as the spouse and co-resident of Kevin Parker[2], and as the registered agent for Dead Man Supplies Corporation at her business address. Doc. 15-17. Under the guidelines established in Rule 4(e), service on the Defendants was proper. The returns of service also state that specific inquiry was made of the persons served, and the individual Defendants are not on active duty with any of the armed forces of the United States. *Id*.

Under Federal Rule of Civil Procedure 12(a)(1), Defendants were required to respond to Plaintiff's complaint within twenty-one (21) days from the date of service. The federal rules require court clerks to enter a defendant's default "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner...." *Kelly v. Florida*, 233 F. App'x 883, 885 (11th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Defendants Dead Man Corporation and Kevin Parker failed to respond to the complaint and have otherwise failed to appear in this action. As discussed above, Nancy Parker's responses were stricken and the Court authorized the clerk to enter a default. Doc. 44, 45. Thus, the Clerk properly entered the defaults against all of the Defendants.

**B.     Liability**

Plaintiff has properly alleged in its Complaint, and has presented evidence in support thereof, that Defendants infringed on its Intenze Marks and at least one of its Intenze Works by willfully and knowingly purchasing, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit ink. *See* Doc. 1 ¶ 26-38, Exhibits D-E, G-H, J. Since Plaintiff has adequately pleaded all of the elements of

---

[2] Florida Statute § 48.031(2)(a) permits substitute service "on the spouse of the person to be served at any place in the county, if the cause of action is not an adversary proceeding between the spouse and the person to be served, if the spouse requests such service, and if the spouse and person to be served are residing together in the same dwelling."

the causes of action in its Complaint, and Defendants defaulted, Defendants admit liability of the well-pleaded allegations of fact. Thus, Plaintiff has succeeded on the merits of such claims. *See Virgin Records Am., Inc. v. Courson,* No. 307-CV-195-J-33MCR, 2007 WL 3012372, at *2 (M.D. Fla. Oct. 12, 2007) (stating "when a defendant is in default, the element of success on the merits is satisfied") (citing *Sony Music Entm't, Inc. v. Glob. Arts Prods.,* 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999)).

### 1.     First Cause of Action – Federal Copyright Infringement

"To prevail on its claim of copyright infringement, Plaintiff must show: (1) that it owns valid copyrights in the designs in question; and (2) that Defendant copied original elements of the copyrighted materials." *Tiffany (NJ), LLC v. Dongping,* No. 10-61214-CIV, 2010 WL 4450451, at *4 (S.D. Fla. Oct. 29, 2010).

With regards to the first prong, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Plaintiff has provided the Court with two copyright registrations for the Intenze Works made within five years after its first publication. Doc. 1 ¶ 19, Exhibit C.

With regards to the second prong, a plaintiff must "demonstrate that the alleged infringers violated at least one exclusive right granted to the copyright holders." *Priority Records, LLC v. Lee,* No. 5:06CV231 CAR, 2007 WL 1087418, at *2 (M.D. Ga. Apr. 9, 2007). Plaintiff has provided evidence that Defendants intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and sold counterfeit ink, using the Intenze Work or artwork that is identical or substantially similar to the Intenze Work, thereby infringing upon Plaintiff's rights in violation of 17 U.S.C. § 501(a). Doc. 1 ¶ 31, 33-36, 40-46,

Exhibit D-E, G. Thus, Plaintiff has successfully demonstrated that Defendants committed willful copyright infringement. *See Dish Network L.L.C. v. TV Net Sols., LLC,* No. 6:12-CV-1629-ORL-41, 2014 WL 6685351, at *4 (M.D. Fla. Nov. 25, 2014) (finding in the context of a default judgment, that the second element of a claim for copyright infringement was satisfied because the plaintiff adequately alleged that defendants infringed on its exclusive rights and since plaintiff satisfied both elements, plaintiff had sufficiently stated a cause of action for copyright infringement); *see also Arista Records, Inc. v. Beker Enters., Inc.,* 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding that the infringement was willful due to defendant's default and the allegations of willfulness set forth in plaintiff's complaint).

    C.    **Second, Third, and Fourth Causes of Action – Trademark Counterfeiting, Trademark infringement and False Designation of Origin, Passing Off & Unfair Competition**

The second, third, and fourth causes of action are all governed by the same standard. *See Kobe Japanese Steak House of Florida, Inc. v. XU, Inc.,* No. 8:14-CV-490-T-23MAP, 2014 WL 6608967, at *3 (M.D. Fla. Nov. 20, 2014) ("A claim for federal counterfeiting and trademark infringement, 15 U.S.C. § 1114(1), and a false designation of origin claim (also known as unfair competition), 15 U.S.C. § 1125(a)(1), are measured by identical standards."). To prove trademark infringement, plaintiff must prove that "(1) it is the prior owner of the trademark; (2) the defendant used the mark in commerce; and (3) defendant's mark is likely to cause confusion." *Id.*; *see also Calhoun v. Lillenas Publ'g,* 298 F.3d 1228, 1232 (11th Cir. 2002). Plaintiff has satisfied all three elements.

First, Plaintiff provided the Court with two trademark registrations for the Intenze Marks which show that Plaintiff utilized the Intenze Marks before Defendants' infringing conduct began in 2014. Doc. 1 ¶ 18, 27, 34, Exhibit B. Thus, Plaintiff has established that it has priority. *See Tiffany*

*(NJ), LLC,* 2010 WL 4450451 at * 4 (finding in the context of a default, plaintiff had established priority because plaintiff's ownership and registration of the marks preceded defendant's infringing conduct).

Second, Plaintiff provided proof that Defendants intentionally offered for sale and sold counterfeit ink using the Intenze Marks (without Plaintiff's consent), through Defendants' retail location, as well as on Defendants' website. As a result, Defendants used the Intenze Marks in interstate commerce. Doc. 1 ¶ 27, 31, 33, Exhibits D-E, H, J. *See id.*; *see also Petmed Express, Inc. v. Medpets.com, Inc.,* 336 F. Supp. 2d 1213 (S.D. Fla. 2004) ("In establishing a website on the Internet, Defendants have used the infringing marks in commerce.").

Finally, Plaintiff has shown that Defendants used marks that are so similar to Plaintiff's Intenze Marks that consumer confusion is likely. Doc. 1 ¶ 14, 24, 35-37, 48-50, 60, 68-71, Exhibit B, D-E, G-H, J; *see Tiffany (NJ), LLC,* 2010 WL 4450451 at 4 (finding that the marks used on the goods advertised, offered for sale and/or sold by defendant were so similar to plaintiff's marks that consumer confusion was likely). *See also Nike, Inc. v. Austin,* No. 6:09-CV-796-ORL28KRS, 2009 WL 3535500, at *3 (M.D. Fla. Oct. 28, 2009) (listing seven factors relevant to a likelihood of confusion, and finding that, "[b]y failing to answer the complaint, Defendants admit that . . . the marks they used are the same or colorably similar . . . [t]he products involved are the same . . . defendants also admit that they willfully infringed [] after having actual and constructive knowledge of the marks. These admissions are sufficient to establish likelihood of confusion"). Therefore, Defendants are liable for willful trademark infringement, counterfeiting, and federal unfair competition.

**IV.     Relief Requested**

Plaintiff requests a permanent injunction, statutory damages in the amount of $150,000, and attorneys' fees.

A.     **Statutory Damages**

A prevailing plaintiff may recover actual or statutory damages under the Copyright Act. 17 U.S.C. § 504(c)(1). The plaintiff may make its election between actual and statutory damages "at any time before final judgment is rendered." *Jordan v. Time, Inc.,* 111 F.3d 102, 104 (11th Cir. 1997) (quoting 17 U.S.C. § 504(c)).

In this case, Plaintiff requests that the Court determine its statutory damages without an evidentiary hearing. Doc. 46. The Court has three options to determine statutory damages in default judgments: (1) assess the damages without a hearing, *see Capitol Records v. Rita Carmichael*, 508 F. Supp. 2d 1079, 1086 (S.D. Ala. 2007) (minimum statutory damages requested); *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14-CV-22859-JAL, 2014 WL 4948632, at *4 (S.D. Fla. Oct. 2, 2014) (reviewed factors to determine reasonable amount of statutory damages when plaintiff requested more than the minimum in default judgment); (2) hold an evidentiary hearing if the court deems it necessary, *see* Fed.R.Civ.P. 55(b)(2) ("[T]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to ... determine the amount of damages ...."; or (3) conduct a jury trial. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998)) ("[I]f a party so demands, a jury must determine the actual amount of statutory damages under § 504(c) in order 'to preserve the substance of the common-law right of trial by jury.' ").

The Court deems an evidentiary hearing necessary to determine the proper amount of damages, particularly because Plaintiff requests more than the statutory minimum, without providing a clear calculation to justify its request. Given Plaintiff's jury trial demand in its Complaint, the Court will schedule a jury trial on damages. If Plaintiff wants to waive its right to a jury trial on damages, it may file a motion seeking such relief, and the Court will convert the jury trial into an evidentiary hearing.

### B.     Injunctive Relief

Pursuant to 17 U.S.C. § 502(a), the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id*.

The Complaint does not provide evidence of actual damages, if any, suffered by Plaintiff as a result of Defendant's infringement. But, due to the possibility of future infringement by Defendant and others, and the seemingly unknowable extent of that infringement, monetary damages alone are inadequate to compensate Plaintiff for any injury it has sustained or may sustain in the future. Further, Plaintiff has submitted evidence of continuing infringing activity in the form

of screenshots taken by counsel on February 25, 2014, demonstrating that counterfeit Intenze ink products were still available on Defendants' website, a receipt and corresponding photograph of Defendants' sale of counterfeit ink on August 24, 2014, and photographs showing Defendants' display of counterfeit ink as late as March 2015. Doc. 47 ¶18. Defendants have not provided evidence of any hardship an injunction would cause them, but Plaintiff could sustain hardship, specifically lost revenue, if Defendants are not enjoined from engaging in the infringing activity. Finally, there is no indication that the public interest would be disserved by the issuance of a permanent injunction against Defendants.

Therefore, the Court concludes that Plaintiff is entitled to a permanent injunction against Defendants which enjoins Defendants from directly or indirectly infringing Plaintiff's rights in its copyright and marks including using the internet to reproduce, copy, or distribute, the products unless Defendants receive a license or express authority from Plaintiff. The injunction will require Defendants to destroy all infringing products in their possession, custody, or control. The Court will include the permanent injunction in the final judgment.

C.  **Attorneys' Fees**

Plaintiff seeks to recover attorneys' fees expended on this litigation in the amount of $33,097.50, which represents a total of 125.2 hours. The billing rates range from $200 - $475 per hour for four attorneys. *See* Doc. 53-1. The Court agrees that Plaintiff is entitled to an award of attorneys' fees, pursuant to 17 U.S.C. § 505. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1984 (2016). However, the Court will defer ruling on the issue of attorneys' fees until after the amount of statutory damages is determined and a final judgment entered, as Plaintiff will incur more fees for a jury trial or evidentiary hearing on the issue of damages. In accordance with Rule

54(d)(2), Fed. R. Civ. P., Plaintiff may file a motion for attorneys' fees upon entry of a final judgment.

Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Default Judgment Against Defendants (Doc. 46) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. The Motion is **GRANTED** as to the issue of liability and entitlement to injunctive relief and statutory damages.

3. The Motion is **DENIED** as to the amount of damages. A jury trial or evidentiary hearing will be scheduled as to the amount of damages.[3] Should Plaintiff wish to waive its right to trial by jury on the issue of damages, it may file a motion seeking such relief within **FOURTEEN (14) DAYS** from the date of this Order.

4. The Court finds that Plaintiff is entitled to attorneys' fees, pursuant to 17 U.S.C. § 505, but defers ruling on the amount. Plaintiff may file a motion for attorneys' fees, upon entry of a final judgment.

**DONE AND ORDERED** in Tampa, Florida on August 4, 2016.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[3] A telephonic status conference will be scheduled for the purpose of setting this matter for a trial on the issue of damages.